**Tagged for publication**



**ORDERED in the Southern District of Florida on September 16, 2015.**

John K. Olson, Judge
United States Bankruptcy Court

_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Fort Lauderdale Division**
**www.flsb.uscourts.gov**

**In re**:

**The Marion and Alfred Charles Foundation, Inc.,**

    Debtor.
_____

Case No. 15-24270-JKO

Chapter 11

**PRELIMINARY ORDER ON MOTION TO DISMISS,
DIRECTING BRIEFING, AND SETTING EVIDENTIARY HEARING**

This Chapter 11 case came before the Court for preliminary hearing on the Emergency Motion (the "Dismissal Motion") [ECF 32] filed by Creditor Rosalie Skinner and seeking dismissal of this case pursuant to 11 U.S.C. § 1112(b).

The gravamen of the Dismissal Motion is that the Debtor Foundation was created and funded as part of an elaborate fraud perpetrated by Andrew Ociepka as a result of undue influence exercised by Ociepka over Skinner's late brother, Alfred Charles. The Dismissal Motion asserts that the proper venue for the resolution of the disputes between Ociepka and Skinner, to which the Foundation is a necessary party, is the Probate Division of the Circuit Court for Broward County, Florida, in which litigation among the parties has been ongoing since March 12, 2014, as Case No. CACE-14-4794, (the "Undue Influence Litigation") now pending before Circuit Judge Charles M. Greene.

> In the Dismissal Motion, Skinner contends that
>
> Ociepka – a former grocery store clerk and free-lance carpenter, who has no independent wealth and who has not worked at all since 1996 – engaged in a calculated scheme of fraud and undue influence to purloin the majority of Alfred's wealth during Alfred's lifetime and then caused Alfred to change his estate plan to divert what remained of Alfred's wealth to Debtor, which was and is under Ociepka's control.

The Dismissal Motion asserts that the amounts transferred to Ociepka before Alfred Charles' death total almost $5 million, and that some $2 million was willed by Alfred to the Debtor Foundation under a Last Will & Testament dated February 23, 2012, and executed at a time when Alfred was not competent. Alfred Charles died December 19, 2012, and the balance of his estate was transferred pursuant to that Will to the Debtor.

The Dismissal Motion asserts that the Debtor has no legitimate business to reorganize. According to the Debtor's Schedules [ECF 16] filed August 20, 2015, the Debtor has no secured or priority creditors; its unsecured creditors consist of Ociepka, two of his lawyers, and Skinner (whose claims are identified as contingent, unliquidated, and disputed). The Debtor's scheduled assets

consist of some $1.77 million in cash held in two frozen bank accounts at PNC Bank, NA, $100 in office equipment, and a "cubicle" rented for $200/month from one of Ociepka's lawyers.

The funds held at PNC Bank are apparently frozen as a result of a contractual hold placed on them by PNC, presumably as a result of the pending Undue Influence Litigation in which PNC is a party defendant. The Debtor Foundation has previously asked Judge Greene to release the PNC Bank hold on the funds, a request which Judge Greene has denied. One of the motions scheduled for hearing before this Court on September 15, 2015, was the Debtor's Motion [ECF 19] seeking an order directing PNC Bank to release those funds to the Debtor. Skinner suggests that the renewal of that request before this Court smacks of forum shopping.

The business of the Debtor, such as it is, is described in the Debtor's Chapter 11 Case Management Summary [ECF 9], filed August 11, 2015, as follows:

> The Debtor is a Florida Not for Profit Corporation that was formed on February 25, 2009, to provide charitable donation to various charities and organizations. Significantly, pursuant to its Articles of Incorporation, the Foundation was established and "organized exclusively for charitable, religious, education, and scientific purposes under section 501(c)(3) of the Internal Revenue code or corresponding section of any future federal tax code".

The Debtor's sole instance of charitable contributions were five donations of $21,000 each made in late 2012, aggregating $105,000. Other than the lease of its cubicle from one of Ociepka's lawyers, there is no other evidence of business activity by the Debtor reflected in any of its filings. The Debtor's lawyers, a highly regarded firm of excellent bankruptcy counsel, were paid their retainer and the Chapter 11 filing fee by Ociepka [See ECF 17]. The Debtor seeks to hire a very sophisticated financial advisory company as its tax accountants [See ECF 25], and to retain a very highly regarded crisis and insolvency management firm as its Chief Restructuring Officer [See ECF 39]. The need for sophisticated professionals of this caliber for this "business" is not apparent.

Indeed, this Debtor appears to need professionals of this high level of sophistication about as much as a fish needs a bicycle.

So why are they here? It appears that these professionals have been retained to make this case look like a real Chapter 11 bankruptcy case. But no matter how much makeup and fancy ribbons you put on a pig, it's still a pig. And no matter how many first-rate bankruptcy professionals you put around this Debtor, it's still a charity of contested origin whose business records will never consist of much more than a checkbook, a file of bank statements, and an annual Form 990 filing with the IRS. And that assumes that Ociepka and the Foundation survive Skinner's challenge to the legitimacy of the origins and very existence of the Foundation.

The only apparent reason for this case to be in this Court is that Ociepka and the Debtor Foundation want to escape from the Undue Influence Litigation before Judge Greene. The disputes in that litigation seem to be uniquely within the province of the Probate Court, and concomitantly outside the competence of this Court.

At the hearing on September 15, 2015, the Court raised *sua sponte* the possibility of dismissal of the case under 11 U.S.C. § 305(a)(1), which provides:

> The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if –
>
> (1) the interests of creditors and the debtor would be better served by such dismissal or suspension.

Because dismissal of the case was sought by Skinner under a different provision of the Bankruptcy Code, § 1112(b), it appeared to the Court that dismissal under § 305(a) at that hearing would not fairly satisfy the statutory requirements of "notice and a hearing" as defined in 11 U.S.C. § 102 as "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances." Because there is no emergency which

would require the Court to act before giving the parties an opportunity to argue and present evidence on the propriety *vel non* of dismissal under § 305(a), the Court will conduct an evidentiary hearing on the question of dismissal.

Accordingly, it is **ORDERED:**

1. The Court will conduct an evidentiary hearing on the Dismissal Motion [ECF 32] as expanded by the Court to include the issue of dismissal under 11 U.S.C. § 305(a) as well as under 11 U.S.C. § 1112(b) on **Monday, October 26, 2015, at 9:30 am** in Courtroom 301, United States Courthouse, 299 East Broward Boulevard, Fort Lauderdale, Florida 33301.

2. All discovery is shortened to 10 days pursuant to Local Rule 9013-1(C)(7).

3. The parties will exchange and file witness and exhibit lists on or before October 16, 2015. Except for rebuttal witnesses or exhibits, no witness may testify and no exhibit may be admitted which is not identified on the witness and exhibit lists.

4. Parties who wish to brief the issues raised in the Dismissal Motion, and as set forth in this Order, may do so by briefs filed and served on or before October 16, 2015. Responsive briefs may be filed and served on or before October 23, 2015.

###